UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM S. TALAGA,

      Plaintiff,

v.

                                                  Case No. 1:10-cv-890
                                                  Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income (SSI).

        Plaintiff was born on December 20, 1988 (AR 33).[1] Plaintiff alleged a disability onset date of December 20, 1995 (his seventh birthday) (AR 95, 110). He graduated from high school in 2008 and has no previous employment (AR 35, 115). Plaintiff identified his disabling conditions as epilepsy with monthly to weekly Grand Mal seizures (AR 115). Plaintiff did not retain a representative to assist him in pursuing his disability claim at the agency level. The ALJ reviewed *pro se* plaintiff's claim *de novo* and entered a written decision denying benefits on September 18, 2009 (AR 19-25). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since he applied for SSI on March 14, 2007 (AR 21). Second, the ALJ found that plaintiff had a severe impairment of epilepsy and a non-severe impairment of anxiety (AR 21-22). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 18-20). In this regard, the ALJ reviewed Listing 11.02 *Epilepsy - compulsive epilepsy* and Listing 11.03 *Epilepsy - nonconvulsive epilepsy* (AR 22). The ALJ decided at the fourth step that plaintiff had:

> the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) involving lifting up to 20 pounds occasionally; lifting or carrying up to 10 pounds frequently; standing or walking for about 6 hours; sitting for up to 6 hours in an 8-hour workday with normal breaks; sitting or standing alternately at will, provided not off task more than 10% of work period; avoiding moderate exposure to moving machinery; and, avoiding all exposure to unprotected heights[.]

(AR 22). The ALJ further found that plaintiff has no past relevant work (AR 23).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy (AR 24). Specifically, plaintiff could perform approximately 43,500 jobs in the regional economy (defined as the State of Michigan) such as: counter clerk (8,200 jobs); light assembly (14,000 jobs);packager (6,300 jobs); and retail clerk (15,000 jobs) (AR 24). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since March 14, 2007, the date plaintiff filed his application for SSI (AR 25).

### III. ANALYSIS

Plaintiff has raised three issues in his appeal. These are discussed in Sections A - C below.

**A.  The ALJ failed in his special duty to develop the record**

**1.  Special circumstances did not exist to trigger the ALJ's "special duty" to develop the record**

When plaintiff appeared at the administrative hearing, the ALJ observed that he was not represented by counsel, noted that plaintiff had been advised about his right to representation "four or five times," and then advised plaintiff of his right to be represented by an attorney or non-attorney to help him "obtain and submit records, explain medical terms, make requests, protect your rights, and present evidence in a light most favorable to your case" (AR 31-32). Plaintiff stated that he understood his right to representation, that he did not have a representative, and that he wanted to proceed without a representative (AR 33). Now, plaintiff contends that the ALJ failed to perform his special duty to develop the record for him as an unrepresented claimant.

Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). As a general rule, a claimant seeking disability insurance benefits (DIB) or SSI from the Social Security Administration is required to obtain the evidence in support of the claim:

> In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 404.1512(a).

An exception to this rule requiring a claimant to furnish evidence in support of his claim exists with respect to an unrepresented claimant at an administrative hearing who has "special circumstances" which prevent him from adequately presenting his case. *See, e.g., Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048, 1049-52 (6th Cir. 1983) (court found that the ALJ had failed to develop a "full and fair record" during an administrative hearing where the claimant: was 79 years old; was unrepresented by counsel; had a fifth grade education; had suffered two strokes; had trouble reading, writing, and reasoning; and received only a superficial examination by the ALJ that failed to take account of the claimant's obvious confusion and inability to effectively present his case). When such special circumstances exist, the ALJ has a "special duty" to develop the record and "to be especially probing in his questioning" to ensure a fair hearing for the claimant. *Id.* at 1052.

The ALJ's special duty to develop a full and fair record, however, does not apply to all unrepresented claimants. "[W]hen a claimant appears without counsel, the mere fact that a claimant was unrepresented is not grounds for reversal." *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 856 (6th Cir.1986). "Rather, we examine each case on its own merits to determine whether the ALJ failed to fully develop the record and therefore denied the claimant a full and fair hearing." *Id. See Lashley* , 708 F.2d at1052 (whether an ALJ failed to fully develop the record is determined on a case by case basis, keeping in mind that a claimant can waive his statutory right to counsel under 20 C.F.R. § 404.971). Thus, the ALJ's special, heightened duty to develop the record is triggered when three special circumstances exist: the claimant is without counsel; the claimant is not capable of presenting an effective case; and, the claimant is unfamiliar with hearing

6

procedures. *See Wilson v. Commissioner of Social Security*, 280 Fed. Appx. 459 (6th Cir. 2008), citing *Lashley*, 708 F.2d at 1051-52; *Nabours v. Commissioner of Social Security*, 50 Fed. Appx. 272, 275 (6th Cir. 2002), citing *Duncan*, 801 F.2d at 856 and *Lashley*, 708 F.2d at 1051-52.

The court concludes that the ALJ's special duty to develop the record did not arise in this particular case. While plaintiff was unrepresented by counsel, he does not claim that the other special circumstances exist. Rather, plaintiff contends that the ALJ failed in his special duty to develop the record because the ALJ did not obtain recent medical records and precluded plaintiff's mother from testifying in support of the claim. The record reflects that the ALJ spent a considerable amount of time questioning plaintiff about his alleged disabilities (epilepsy and anxiety), his medical treatment (including plaintiff's medication regimen and his recent treatment involving a Vargus nerve implant), his high school education (a 2.9 grade point average), his electronics classes taken at the Career Technical Center in Cadillac (which could be used for college credit), his extra-curricular activities (participating in 9th grade track, helping to wire a house for Habitat for Humanity, helping with recycling projects, and cleaning garbage off of side streets), his activities at home (using a chainsaw to cut firewood, splitting wood for two or three hours during the day, operating a snow blower, and operating a riding lawnmower), his plans for the future (obtaining a driver's license, attending Baker College and living in an apartment away from home), and his ability to perform various jobs (such as cashier or clerk positions) (AR 33-61).

The ALJ also questioned plaintiff about his history of seizures, with plaintiff testifying that suffered four seizures in 2007, three seizures in 2008, and one seizure during the first six months in 2009 (AR 42-43). Plaintiff testified that his most recent seizure, which occurred on or about June 24, 2009, resulted in the dislocation of his right shoulder (AR 41-42). Nevertheless,

plaintiff testified that his epilepsy has been "pretty well regulated" over the past few years, and that he has no problems unless he misses a dose of the medication (AR 55-56). For example, plaintiff testified that he had no concerns about operating the riding lawn mower if he took his medication (AR 55-56). With respect to mental health problems, plaintiff testified that he received no mental health treatment and denied significant problems with anxiety (AR 53-54).

When asked about his ability to perform work-related activities, plaintiff testified that he could work for eight hours per day as a cashier at a gas station or at a large store like Wal-Mart or Meijer, provided that he could sit down at times throughout the day, and that he had the ability to sit on a stool and work a cash machine (AR 59-61). However, plaintiff testified that he could not work in a factory (AR 61).

In addition, this is not a case where an unrepresented Social Security claimant received only a brief, superficial hearing. *See, e.g., Lashley*, 708 F.2d at 1052 (noting that the ALJ conducted a "brief" 25-minute hearing which was transcribed on 11 pages, and engaged in "superficial questioning" of an elderly claimant with a fifth-grade education who had suffered two strokes, "possessed limited intelligence, was inarticulate, and appeared to be easily confused"). At the time of the administrative hearing, plaintiff was a 20-year-old high school graduate. The length of plaintiff's hearing (about 47 minutes) and the ALJ's questioning of plaintiff (30 pages of the 39-page transcript) reflect a lengthy inquiry by the ALJ regarding plaintiff's education, medical condition, work limitations, and plans for the future (AR 29-67). Unlike the claimant in *Lashley*, plaintiff expressed an understanding of the proceedings, gave frank answers, and articulated his position to the ALJ. Accordingly, special circumstances did not exist in this case which triggered the ALJ's special duty to develop the record for plaintiff.

### 2. The ALJ did not preclude plaintiff's mother from testifying or prevent plaintiff from presenting additional medical evidence

Plaintiff also faults the ALJ for precluding his mother from testifying about his medical condition and from presenting additional medical records on plaintiff's behalf. The regulations require the ALJ to develop a claimant's complete medical history for at least 12 months preceding the month in which he filed his application for benefits and to make every reasonable effort to help the claimant get medical reports from his own medical sources. 20 C.F.R. § 404.1512(d). The record reflects that the ALJ complied with this regulation. The most recent medical records in the administrative transcript are dated from June and July 2007, a few months after plaintiff filed his application for SSI (AR 19, 225, 227, 239, 245). Plaintiff's mother, Carol Talaga, contends that she had more recent medical records but was prevented from presenting the records to the ALJ. Plaintiff, however, has yet to disclose any of these recent medical records to the court.

In a notarized document, Carol Talaga set forth the following facts in support of plaintiff's claims: she and her husband went to the administrative hearing with plaintiff; they registered with the court clerk; the clerk called plaintiff's name and "said at this time the Judge wanted to speak with William alone;" when William returned, she was confused because she had plaintiff's "medical records and documents"; and, she was advised by the clerk that the case was closed and that the Judge would give a decision within one week and 90 days. Statement of Carol M. Talaga (Jan. 10, 2011) (docket no. 15-5). Carol Talaga further explained:

> When we were on our way home we asked William if he told the Judge I has [sic] all the records and wanted to speak on his behalf. He told us they asked him if he had a Lawyer for legal Representation with him he told them no. He did tell them his Mother was here and she had all his "stuff" and I don't know if they did not

9

>understand what he meant but they went on questioning him and never requested my testimony.

*Id.*

Contrary to Carol Talaga's statement, the record does not reflect that plaintiff told the ALJ that his mother was present for the hearing or that plaintiff told the ALJ that his mother had all of his "stuff" (i.e., medical records). After advising plaintiff of his right to an attorney and after plaintiff stated that he did wish to proceed without a representative, the ALJ advised plaintiff that he was aware of "exhibits through 9F in the file" and admitted those exhibits (AR 31-33). When the ALJ asked plaintiff "[i]s there anything else for my consideration today?" plaintiff responded "No" (AR 33). Then, after the ALJ elicited testimony from both plaintiff and the vocational expert, the ALJ asked plaintiff if he had "anything else before we close the record here?" to which plaintiff responded "No, I think I have said all I need to say" (AR 67). While plaintiff's mother had some medical records and wanted to participate in the hearing, plaintiff, an adult appearing on his own behalf, did not advise the ALJ of either the additional medical records or of his mother's deesire to testify.

Furthermore, plaintiff's testimony regarding his current medical condition was consistent with the medical evidence in the administrative record. In March 2006, plaintiff's neurologist, James C. Buswinka, D.O., stated that plaintiff's epilepsy was under adequate control with medication (AR 201). The doctor did not restrict plaintiff's activity, but merely reminded him about safety issues such as swimming with a lifeguard and using a helmet when riding a bicycle or skateboarding (AR 201). In November 2006, Dr. Buswinka noted that plaintiff's epilepsy was under adequate control with medication (AR 203). In March 2007, the doctor noted increased seizure

frequency (AR 205). However, by June 2007, Dr. Buswinka noted that plaintiff was doing "extremely well" on a new medication and that his seizures were "very well controlled" (AR 225).

In June 2007, James R. Findley, Ph.D., performed a psychological evaluation of plaintiff (AR 227). Dr. Findley felt that plaintiff was shy, timid and looked younger than his age (AR 229). While plaintiff's mother seemed to "maximize" the extent of plaintiff's "impaired thinking" during the evaluation, plaintiff wanted to "minimize" the effect of the epilepsy, expressing his hope to attend college (AR 229). Dr. Findley observed plaintiff was highly anxious during the interview, exhibiting symptoms of social anxiety and breathing difficulty, and he diagnosed plaintiff as having an anxiety disorder (AR 229-30).

In a physical residual functional capacity (RFC) assessment from June 2007, a non-examining DDS physician determined that plaintiff had no exertional limitations, but that he should avoid hazards (such as machines and heights) due to a seizure disorder (AR 232-40). The physician felt that plaintiff's problems with activities of daily living (as expressed by his mother, e.g., difficulty with memory, completing tasks, following instructions and concentration) were caused by his medication (AR 232-240). In a psychiatric review technique form, a non-examining psychologist determined that plaintiff suffered from a non-severe impairment of anxiety related disorders, which had, at most, a mild limitation on his activities (AR 245-58).

Plaintiff's extensive testimony was consistent with the medical record, and provided substantial evidence for the ALJ to conclude that plaintiff could perform work-related activities. Plaintiff expressed no significant impairments related to anxiety and testified that his epilepsy was controlled by medication, with decreasing incidents of seizures since 2007. Despite suffering from epilepsy, when plaintiff took his medication, he was able to engage in a number of activities which

11

a lay person might describe as potentially hazardous, i.e., operating a chainsaw, operating a snow blower, and operating a riding lawnmower. An impairment that can be remedied by treatment will not serve as a basis for a finding of disability. *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967). *See also Hardaway v. Secretary of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (noting that plaintiff's respiratory problems could be effectively controlled with use of drugs) (per curiam); *Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984) (finding no disability where the claimant' impairments were controlled with medication).

The ALJ's decision is supported by substantial evidence. Based on the record as a whole, there was no reason for the ALJ to obtain additional medical records or to seek out the testimony of plaintiff's mother. Accordingly, the ALJ did not commit error with respect to precluding testimony or preventing the admission of medical evidence.

### B. The Appeals Council's procedural error did not allow plaintiff's counsel to draft a supplemental brief of the issues on appeal in this case.

Plaintiff contends that the ALJ's decision should be reversed and remanded because of a "procedural error" by the Appeals Council. About one month after plaintiff's claim was denied, he engaged an attorney, Mr. Seward, to appeal the ALJ's adverse decision to the Appeals Council (AR 15). Shortly thereafter, Mr. Seward, requested an audio copy of the administrative hearing. *See* Letter requested audio tape (Oct. 29, 2009) (docket no. 15-3). Plaintiff contends that the tape was mistakenly sent to a person by the name of Vernon Williams. Plaintiff's Brief at pp. 6-7. Plaintiff's contention is based upon the July 16, 2010 "Notice of Appeals Council Action" denying plaintiff's request for review, which reflects that a copy of the Notice was sent to "Vernon M. Williams, P.O. Box 625, Norton, VA 24273" (AR 3). Plaintiff's Brief at pp. 6-7. Plaintiff and his

mother subsequently sent Mr. Seward a letter stating that they had never spoken to "Vernon William" [sic]. *See* Letter (Dec. 1, 2010) (docket no. 15-4).

On August 2, 2010, Mr. Seward, wrote a letter to the Appeals Council asking that the office "honor our request to obtain an audio copy of the hearing" and a six week continuance to review the information and file a letter brief with the Appeals Council. *See* Letter (Aug. 2, 2010) (docket no. 15-3). Plaintiff's attorney requested a reply before the 60 day deadline for filing an appeal in the Federal Court. *Id.* Apparently, plaintiff did not receive the requested reply and filed the present action reviewing the ALJ's decision on September 10, 2010. *See* Complaint (docket no. 1). More than one month after filing this Federal Court action, Mr. Seward filed a "Request to vacate prior action per HALLEX I-3-5-50," asking the Appeals Council to "issue an order vacating the prior Denial per the HALLEX so we can dismiss the subsequent Civil case and brief the issues at the Appeals Council level." [2] *See* Request to Vacate (Oct. 13, 2010) (docket no. 15-2). Plaintiff's letter did not articulate a particular basis for vacating the Appeals Council's decision. Mr. Seward sent a second request on November 2, 2010. *Id.*

Now, plaintiff contends that the ALJ's decision denying benefits should be reversed and remanded because of the Appeals Council's "procedural error" of failing to send an audio copy of the hearing to Mr. Seward. According to plaintiff, due to the alleged error, "[p]laintiff's counsel was not able to file an Appeals Council Letter brief addressing the issues in this case such as developing the record and evidence of additional 'severe' impairments that would impact the RFC." Plaintiff's Brief at p. 8.

---

[2] "HALLEX" refers to the Social Security Administration's procedural manual, which sets forth safeguards and procedures for the agency's administrative proceedings. *Robinson v. Barnhart*, 124 Fed. Appx. 405, 410 (6th Cir. 2005). HALLEX is available at http://www.ssa.gov/OP_Home/hallex/hallex.html.

Plaintiff's claim of error is not properly before the court. This court does not review the Appeals Council's denial of plaintiff's request for review. "Only final decisions of the [Commissioner] are subject to judicial review under [42 U.S.C.] § 405(g)." *Willis v. Secretary of Health and Human Services.*, No. 93-6337, 1995 WL 31591 at * 2 (6th Cir. 1995), *citing Califano v. Saunders*, 430 U.S. 99, 108 (1977). When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Commissioner. *See Sims*, 530 U.S. at 106-107 ("SSA regulations provide that, if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision. But if, as here, the Council denies the request for review, the ALJ's opinion becomes the final decision"); *Casey v. Secretary of Health and Human Services.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("[w]hile new material evidence may be submitted for consideration to the appeals council pursuant to 20 C.F.R. § 404.970, on appeal we still review the ALJ's decision, not the denial of review by the appeals council"); *Willis*, 1995 WL 31591 at * 2 ("[p]laintiff's claim that he was denied due process when the Appeals Council allegedly failed to review his objections to the ALJ's findings is not subject to judicial review"). Accordingly, plaintiff's claim of error related to the Appeals Council's denial of his request for review will be denied.

**C.** **Sentence-six remand**

Finally, plaintiff seeks a sentence-six remand for consideration of additional medical evidence from 2007 through 2009. When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court . . . may at any

time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

Plaintiff's request for a sentence-six remand is without merit. Because plaintiff has not presented the omitted medical records for review, the court has no basis to determine whether the "evidence might have changed the outcome of the prior proceeding." *Melkonyan*, 501 U.S. at 98. Plaintiff has failed to meet his burden to show that the new evidence is material. *Id.* Accordingly, plaintiff's request for a sentence-six remand must be denied.

### IV. CONCLUSION

The ALJ's determination of plaintiff's residual functional capacity, taken together with the testimony of the vocational expert, provides substantial evidence to support the ALJ's finding that there are a significant number of jobs in the relevant economy that plaintiff can perform.

Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g) and his request for a sentence-six remand will be denied.  A judgment consistent with this opinion shall be issued forthwith.


Dated:  September 19, 2011  /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge